**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROSE MARY MIRANDA,<br><br>               Plaintiff,<br><br>     v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social<br>Security,<br><br>               Defendant. | Case No. CV 17-7616-JPR<br><br>**MEMORANDUM DECISION AND ORDER AFFIRMING COMMISSIONER** |

**I.    PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). The matter is before the Court on the parties' cross-motions for summary judgment. The Court has taken both motions under submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed.

## II. BACKGROUND

Plaintiff was born in 1960. (Administrative Record ("AR") 60, 75.) She completed 10th grade (AR 69, 188) and worked as a shipping and receiving clerk and restaurant shift leader (AR 52, 72, 188).

On September 6, 2013, Plaintiff applied for DIB, alleging that she had been unable to work since April 7, 2009, because of "bulged disk #2 [and] #5," "fractured tailbone," "back pain due to back injury," and "hepatitis c." (AR 60.) After her application was denied initially and on reconsideration (AR 89, 97), she requested a hearing before an Administrative Law Judge (AR 102). A hearing was held on June 11, 2015, at which Plaintiff, who was represented by counsel, testified, as did a medical and a vocational expert. (See AR 44-59.) In a written decision issued July 9, 2015, the ALJ found Plaintiff not disabled. (AR 28-43.) Plaintiff sought Appeals Council review (AR 22), which was denied on September 27, 2016 (AR 1-8). This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

It is more than a scintilla but less than a preponderance. <u>Lingenfelter</u>, 504 F.3d at 1035 (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. <u>Id.</u> at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

A. <u>The Five-Step Evaluation Process</u>

The ALJ follows a five-step evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine

whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and her claim must be denied. § 404.1520(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. § 404.1520(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, she is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. § 404.1520(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

4

final step in the sequential analysis. § 404.1520(a)(4)(v); <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

    B.    <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between April 7, 2009, the alleged onset date, and December 31, 2011, her date last insured. (AR 30.) At step two, he concluded that Plaintiff had severe impairments of "hepatitis C, cholelithiasis,[2] gallstones, degenerative disc disease of the lumbar spine, degenerative changes of the left wrist, mild degenerative disc disease of the cervical spine, personality disorder, and polysubstance abuse in remission." (<u>Id.</u>) At step three, he determined that Plaintiff's impairments did not meet or equal a listing. (AR 30-31.)

At step four, the ALJ found that Plaintiff had the RFC to perform light work with additional limitations:

> [She] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for 6 hours out of an 8-hour workday with regular breaks; she can sit for 6 hours out of an 8-hour workday with regular breaks; she can occasionally reach above shoulder level with the bilateral upper extremity; she can occasionally finger, handle, and grip with the left upper extremity; she can occasionally operate foot pedals with the bilateral lower extremity; she can occasionally kneel, stoop, crawl, and crouch; she cannot climb ladders, ropes, or scaffolds;

---

[2] Cholelithiasis is the medical term for the presence of stones in the gallbladder. <u>Stedman's Medical Dictionary</u> 339 (27th ed. 2000).

5

> she cannot walk on uneven terrain; she cannot work at
> unprotected heights; she can perform moderately complex
> tasks with a reasoning level of four or below; she can
> frequently interact with coworkers; and she has no
> limitation interacting with the public.

(AR 32.) The ALJ determined that Plaintiff was unable to perform her past relevant work. (AR 36.) At step five, he relied on the VE's testimony to find that given Plaintiff's age, education, work experience, and RFC for "unskilled light" work "impeded by additional limitations," she could perform light, unskilled jobs available in the national economy, such as "Cashier II, DOT 211.462-010," and "Parking lot signaler, DOT 915.667-014." (AR 36-37.) Accordingly, he found Plaintiff not disabled. (AR 37.)

**V.  DISCUSSION**

Plaintiff argues that the ALJ erred in assessing the opinion of state-agency consulting psychologist Dr. Rosa Colonna by failing to incorporate "any limitations as to social functioning or to problems with attention and concentration" into her RFC. (See Mem. P. & A. at 6-10.) Plaintiff did not raise this issue to the Appeals Council (see AR 267-69), and she never asked the vocational expert any questions about such limitations (see AR 58). Accordingly, Plaintiff has likely waived the right to raise this issue in federal court.[3] See Meanel v. Apfel, 172 F.3d

---

[3] Plaintiff has actually "forfeited" the issue rather than "waived" it. See United States v. Scott, 705 F.3d 410, 415 (9th Cir. 2012) ("Waiver is 'the intentional relinquishment or abandonment of a known right,' whereas forfeiture is 'the failure to make the timely assertion of [that] right.'" (alteration in original) (citation omitted)). But because most of the analogous cases refer to a "waiver rule," the Court does too.

1111, 1115 (9th Cir. 1999) (as amended) (reviewing court need not address issues not raised before ALJ or Appeals Council unless manifest injustice would result); see also Phillips v. Colvin, 593 F. App'x 683, 684 (9th Cir. 2015) ("This issue was waived by [claimant]'s failure to raise it at the administrative level when he was represented by counsel, and [claimant] has not demonstrated manifest injustice excusing the failure."); Solorzano v. Astrue, No. ED CV 11-369-PJW, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012) ("Counsel are not supposed to be potted plants at administrative hearings. They have an obligation to take an active role and to raise issues that may impact the ALJ's decision while the hearing is proceeding so that they can be addressed.").[4]

In any event, as discussed below, the ALJ properly evaluated the medical-opinion evidence and determined Plaintiff's RFC, and any error was harmless.

A. Applicable Law

A claimant's RFC is "the most [she] can still do" despite impairments and related symptoms that "may cause physical and mental limitations that affect what [she] can do in a work setting." § 404.1545(a)(1). A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal

---

[4] Meanel was decided in 1999. In 2000, the Supreme Court held that a plaintiff does not forfeit a claim simply by failing to raise it before the Appeals Council. Sims v. Apfel, 530 U.S. 103, 108 (2000) (holding that claims need not be raised before Appeals Council to be exhausted). But Sims expressly declined to decide whether a claim would be forfeited if the claimant also neglected to raise it before the ALJ. See id. at 107 ("Whether a claimant must exhaust issues before the ALJ is not before us."). Thus, Sims did not overrule Meanel, which this Court remains bound by.

7

standard and substantial evidence in the record as a whole supports the decision. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ must consider all the medical opinions "together with the rest of the relevant evidence." § 404.1527(b);[5] see also § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.").

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. Lester, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than an examining doctor's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's. Id.; see § 404.1527(c)(1).

When a physician's opinion is not contradicted by other medical-opinion evidence, it may be rejected only for "clear and convincing" reasons. Magallanes v. Bowen, 881 F.2d 747, 751 (9th

---

[5] Social Security regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. When, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."); Spencer v. Colvin, No. 3:15-CV-05925-DWC, 2016 WL 7046848, at *9 n.4 (W.D. Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking."). Accordingly, citations to 20 C.F.R. § 404.1527 are to the version in effect from August 24, 2012, to March 26, 2017.

8

Cir. 1989); see Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). When it is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Carmickle, 533 F.3d at 1164 (citing Lester, 81 F.3d at 830-31).

In determining an RFC, the ALJ should consider those limitations for which there is support in the record and need not take into account properly rejected evidence or subjective complaints. See Bayliss, 427 F.3d at 1217 (upholding ALJ's RFC determination because "the ALJ took into account those limitations for which there was record support that did not depend on [claimant]'s subjective complaints"); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ not required to incorporate into RFC those findings from physician opinions that were "permissibly discounted"). The ALJ considers findings by state-agency medical consultants and experts as opinion evidence. § 404.1527(e).

The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "'evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted).

B.  Relevant Background

On January 22, 2015, Dr. Colonna performed a complete psychological evaluation of Plaintiff. (AR 662-70.) Plaintiff reported that she had been diagnosed with bipolar disorder "[five] years ago" and had a psychiatric hospitalization in 2014. (AR 663.) She stated that "she also went through a

detoxification program [for her methamphetamine and opioid addictions] at San Dimas Hospital."[6] (Id.) Dr. Colonna's mental-status examination of Plaintiff showed that she "was able to respond appropriately to imaginary situations requiring social judgement and knowledge of the norms." (AR 664.) Her "attention and concentration span [were] moderately diminished," as was her memory "for immediate, intermediate and remote recall." (Id.) She "appear[ed] to be sedated [and] at times [was] tearful." (Id.) Her effort was "adequate," her mood was "mildly dysthymic," and her affect was "constricted." (Id.) Plaintiff showed "no obvious psychotic indicators" "at the time of the examination." (Id.) She was "oriented to person, time, place and purpose of the examination." (Id.) Her speech was "under modulated but clear," and her thoughts were "organized in a linear manner." (Id.) "Psychomotor slowing [was] not evident." (Id.)

Dr. Colonna determined that "[g]iven the test results and clinical data, [Plaintiff's] overall cognitive ability [was] in

---

[6] Dr. Colonna could not confirm Plaintiff's bipolar diagnosis or her hospitalizations because no medical records were provided to her. (See AR 663.) The record shows that Plaintiff admitted herself to Aurora Charter Oak Hospital from March 3 to March 10, 2014, for treatment of "depression and withdrawal from opiates." (See AR 700-07.) The discharge summary from Charter Oak did not show a bipolar-disorder diagnosis (AR 700-01; see also AR 690), nor does any other document in the record. The only records from San Dimas Community Hospital are from Plaintiff's various visits to the emergency room. (See AR 628-33 (Mar. 12, 2014, for "left ankle and foot pain"), 634-37 (Mar. 2, 2014, for narcotics withdrawal), 638-40 (Jan. 31, 2014, for body aches associated with myalgias), 641-47 (Nov. 9, 2013, for anxiety and arm and chest pain).) It does not appear that she was admitted to the hospital after any of these emergency-room visits. (See AR 630, 635, 637, 640, 647.)

the mid borderline to low average range." (AR 665.) She diagnosed Plaintiff with "mood disorder, not otherwise specified" and "personality disorder borderline traits." (AR 666.)

In her medical-source-statement report, Dr. Colonna noted that "[b]ased on [her] assessment, [Plaintiff] would be able to understand, remember and carry out short, simplistic instructions without difficulty" and had a "mild inability to understand, remember and carry out detailed instructions." (Id.) She noted that Plaintiff would "be able to make simplistic work-related decisions without special supervision." (Id.) Dr. Colonna further stated that Plaintiff "present[ed] with a mild inability to interact appropriately with supervisors, coworkers and peers" because she "bec[a]me tearful at times" during the evaluation. (Id.)

In a form attached to her report, Dr. Colonna checked boxes noting that Plaintiff could understand, remember, and carry out simple instructions and make judgments on simple work-related decisions with no impairments. (AR 668.) Plaintiff had "mild" impairments understanding, remembering, and carrying out "complex" instructions and making judgments on "complex work-related decisions." (Id.) Plaintiff also had "mild" restrictions interacting appropriately with supervisors, coworkers, and the public. (AR 669.) The check-box form defined a "mild" impairment as meaning that "[t]here is a slight limitation in this area, but the individual can generally function well." (AR 668.)

The ALJ gave "great weight" to Dr. Colonna's opinion because she "personally observed and examined" Plaintiff and her "opinion

[was] consistent" with the "positive objective physical clinical and diagnostic findings" from the examination. (AR 35-36.) He noted that "[s]he assessed mental limitations that are essentially the same as those included in the [RFC]." (Id.)

C. Analysis

The ALJ found that Plaintiff was able to "perform moderately complex tasks with a reasoning level of four or below," could "frequently interact with coworkers," and had "no limitation interacting with the public." (AR 32.) Plaintiff argues that because the ALJ did not assess limitations on interactions with the general public or in concentration, persistence, or pace, he implicitly rejected Dr. Colonna's opinion in part and failed to give specific and legitimate reasons for doing so. (Mem. P. & A. at 8-9.)[7] Because the ALJ properly assessed Dr. Colonna's opinion and incorporated it into her RFC, remand is not warranted.

In fact, the ALJ's RFC was generally consistent with Dr. Colonna's findings, as he noted. (See AR 35-36.) Although the ALJ did not mention the check-box Dr. Colonna marked stating that Plaintiff had mild limitations interacting appropriately with the public (see AR 669), he was not required to "discuss every piece of evidence" when crafting Plaintiff's RFC. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)). Dr. Colonna's report as a whole indicated that Plaintiff could

---

[7] Because Plaintiff assumes that the specific-and-legitimate standard applies (see Mem. P. & A. at 7-8), the Court does so as well.

12

"generally function well" and was "able to respond appropriately to imaginary situations requiring social judgement and knowledge of the norms." (AR 664, 668.) She also noted that Plaintiff was "socially appropriate" with her. (AR 666.) The ALJ gave Dr. Colonna's report "great weight" and discussed key portions of it in his decision. (AR 34-35); see also Ward v. Berryhill, __ F. App'x __, No. 16-55078, 2017 WL 4512210, at *2 (9th Cir. Oct. 10, 2017) (holding that ALJ's failure to mention physician's observation of plaintiff's moderate impairment in ability to maintain regular attendance at work did not require reversal even though ALJ gave opinion "great weight" because physician's "report as a whole indicate[d] that [plaintiff was] capable of working full-time"). That report indicated that Plaintiff was capable of acting "socially appropriate" with members of the general public. (See AR 662-70.)

"An ALJ must consider all of the evidence in the record, not just a lone sentence." Ward, __ F. App'x __, 2017 WL 4512210, at *2. Moreover, according to the Commissioner's Program Operations Manual System, the ALJ did not need to specifically take into account each check-box limitation in Plaintiff's RFC because "[i]t is the narrative written by the psychiatrist . . . that adjudicators are to use as the assessment of RFC." See Garner v. Colvin, 626 F. App'x 699, 703 (9th Cir. 2015) (citing POMS DI 25020.010 at B.1., available at https://secure.ssa.gov/poms.NSF/lnx/0425020010). Although that narrative specifically noted Plaintiff's "mild inability to interact appropriately with supervisors, coworkers and peers" — which the ALJ specifically took into account by limiting her to frequent interactions with

13

coworkers (AR 32) — it made no mention of any limitation in dealing with the public. (AR 666.)

Further, the ALJ's determination that Plaintiff could "perform moderately complex tasks with a reasoning level of four or below" reasonably synthesized any limitations in attention and concentration assessed by Dr. Colonna. (See AR 32.)[8] "[A]n ALJ's [RFC] assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

Dr. Colonna opined that though Plaintiff's "attention and concentration span [were] moderately diminished" on the day of the exam, she "would be able to understand, remember and carry out short, simplistic instructions without difficulty" and presented with only a "mild inability to understand, remember and carry out detailed instructions." (AR 664, 666.) Her "insight and judgment [were] grossly age appropriate." (AR 664.) Plaintiff also had only "mild" restrictions in understanding, remembering, and carrying out complex instructions and making judgments on complex work-related decisions. (AR 668.) "Mild" restrictions represent slight limitations that do not prevent the

---

[8] The Dictionary of Occupational Titles describes six levels of reasoning under the "Reasoning Development" scale. See DOT, app. C, 1991 WL 688702. Level-four reasoning means a claimant can "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists." Id. The two jobs the ALJ found Plaintiff could perform, cashier II and parking-lot signaler, have reasoning levels of three and two, respectively. See DOT 211.462-010, Cashier II, 1991 WL 671840; id. 915.667-014, Parking Lot Signaler, 1991 WL 687870.

claimant from "generally function[ing] well." (AR 668.) Moreover, to the extent Dr. Colonna's report was based on Plaintiff's symptom statements, the ALJ found her subjective symptom testimony not entirely credible (AR 32-33), which Plaintiff does not challenge. The ALJ's RFC determination was thus consistent with the level of functioning assessed by Dr. Colonna and found elsewhere in the record. (See, e.g., AR 364 (Oct. 2011 neurological consultation, observing that "[t]hree-stage commands are followed easily" and "[a]ttention span and concentration are normal").)

Accordingly, the ALJ did not err in assessing the medical-opinion evidence or determining Plaintiff's RFC. Substantial evidence therefore supports the ALJ's decision.[9] As such, remand

---

[9] Furthermore, as Defendant points out (Def.'s Opp'n to Pl.'s Mot. Summ. J. at 6-8), it is not clear that the limitations assessed by Dr. Colonna on January 22, 2015, even existed before the expiration of Plaintiff's insured status on December 31, 2011 (AR 30, 183). In order to receive DIB, a claimant must establish that she became disabled on or before the expiration of her insured status. § 404.131; see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). The record as a whole does not reveal substantial evidence of a mental impairment during the required period. On April 28, 2011, Plaintiff's "judgment and insight appear[ed] to be normal," and "[n]o mood disorders" were recorded. (AR 367.) On October 28, 2011, a mental-status examination showed Plaintiff to be "alert and fully oriented," "[s]pontaneous speech [was] fluent without paraphasias," "[t]hree-stage commands [were] followed easily," she "repeat[ed] a complicated sentence well," "[r]ecent and remote memory [were] good," "[f]und of knowledge [was] good," and "[a]ttention span and concentration [were] normal." (AR 364.) When Plaintiff applied for DIB in 2013, she did not even allege a mental impairment. (See AR 60.) It is true, as the ALJ notes (see AR 34), that Plaintiff was prescribed antidepressants in 2011 (see AR 274 (listing various medications, though unclear which of these were actually prescribed), 279, 294), but the accompanying medical records are mostly illegible — with any legible notes describing physical rather than mental problems — making it difficult to determine how severe Plaintiff's mental symptoms

15

is not warranted.  See Stubbs-Danielson, 539 F.3d at 1174.

**VI. CONCLUSION**

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[10] IT IS ORDERED that judgment be entered AFFIRMING the Commissioner's decision, DENYING Plaintiff's motion for summary judgment, GRANTING Defendant's motion for summary judgment, and DISMISSING this action with prejudice.

DATED: November 29, 2017  _____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

were at that time.  (See generally AR 270-367.)  Though a medical examiner who reviewed her records for a claim not associated with her DIB application noted in January 2011 that Plaintiff had psychiatric symptoms and took bupropion and Paroxetine "for panic attacks" to "calm her down" (see AR 546, 595), there are no actual psychiatric or other medical records supporting that statement.

[10] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

16